UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,

v.                                                                              Case No. 8:22-cr-210-TPB-JSS

MICHAEL HANKERSON,

    Defendant.
_____/

## ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS

This matter is before the Court on Defendant's "Motion to Suppress and Request for Evidentiary Hearing," filed by counsel on July 6, 2022. (Doc. 28). On August 5, 2022, the United States of America filed a response in opposition to the motion. (Doc. 31). On August 30, 2022, the Court held a hearing to address the motion. (Doc. 43). On September 13, 2022, the parties filed supplemental briefs in support of their positions. (Docs. 47; 48). After reviewing the motion, response, evidence, testimony, supplemental briefs, court file, and the record, the Court finds as follows:

## Background

The facts are largely undisputed. In the early morning hours of May 10, 2022, Defendant was driving a commercial truck to Jacksonville, Florida, when he received a phone call from his girlfriend who informed him officers were at the home they shared (with others) in Poinciana, Florida. Law enforcement officers believed that state fugitive Lonnie Washington was staying at the home.[1]

---

[1] Lonnie Washington, who was on felony probation, was wanted on several state charges.

Without a search warrant, officers entered the residence and conducted a search. Detective Von Leue testified that Defendant's mother, Amina Mathis, agreed to provide a key to the residence. According to Ms. Mathis, she agreed to provide her key to the front door so that Detective Von Leue did not otherwise "break the door down."

Washington was located in a front bedroom and arrested. While clearing the residence, officers entered a master bedroom and observed a firearm in plain view.[2] Officers used this to establish probable cause for a subsequent search warrant. The second search yielded a firearm, ammunition, and other items. Defendant was subsequently charged with violating 18 U.S.C. § 922(g) (felon in possession of a firearm).

Following his arrest, on May 11, 2022, Defendant was transported by FBI Agent Melissa Montoya to court for his initial appearance. She administered *Miranda* warnings to Defendant while he was inside the vehicle by reading the FBI FD395 form. Defendant did not sign the form.

Defendant has moved to suppress evidence and statements, arguing that the entry into the residence and subsequent search violated the Fourth Amendment because officers conducted the search based on an arrest warrant rather than a search warrant. The Government contends that Ms. Mathis gave consent to enter and search the home for Washington. Defendant also argues that his *Miranda*

---

[2] Defendant claims that his girlfriend, a lawful gun owner, is in fact the owner of this gun.

waiver was invalid, while the Government asserts that his wavier was knowingly and voluntarily made.

## Analysis

### *Entry to Residence and Search*

Under the Fourth Amendment, all persons have the right "to be secure in their person, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The Supreme Court has generally interpreted this to mean that a search must be based on probable cause and must be executed pursuant to a warrant. *Katz v. United States*, 389 U.S. 347, 356-57 (1967). While some circumstances may allow searches and seizures without a warrant, the Fourth Amendment favors the use of warrants. *Illinois v. Gates*, 462 U.S. 213, 236 (1983) (noting "the Fourth Amendment's strong preference for searches conducted pursuant to a warrant").

A search is reasonable when consented to, and consent does not need to be expressly given but may be fairly inferred from the totality of the circumstances. *Birchfield v. North Dakota*, 579 U.S. 438, 476 (2016); *Schneckloth v. Bustamonte*, 412 U.S. 218 (1973). The prosecution bears the burden to prove that consent was freely and voluntarily given. *Bumper v. North Carolina*, 391 U.S. 543, 548-49 (1968). A resident of a jointly occupied premises may consent to a warrantless search of the property. *Fernandez v. California*, 571 U.S. 292, 299-300 (2014). And warrantless entry is valid when based upon the consent of a third party whom law

enforcement officers reasonably believe possesses common authority over the premises. *Illinois v. Rodriguez*, 497 U.S. 177 (1990).

At the evidentiary hearing, Detective Kenneth Von Leue testified that after informing Ms. Mathis of the fugitive investigation, she confirmed that Washington was staying at the residence. Detective Von Leue obtained consent from Ms. Mathis to enter the home, and she gave him a key to enter and told him about the general location of the bedroom Washington was staying in. Detective Von Leue further testified that he would not call Ms. Mathis a liar, but he did not recall threatening to break her door down.

Ms. Mathis testified that she gave consent to enter the residence, but only because Detective Von Leue had threatened "[i]n a nice tone" to "bust down the door" if she did not provide consent.[3] She also told them about Washington's general location in the house. She explained that she cooperated with the police because she felt that she had to cooperate with them. However, she also testified that she wanted to cooperate to get Washington (a person who was the subject of an arrest warrant) out of her house. She further stated that even if the detective had said nothing about the possibility of breaking down a door, she still would have wanted officers to go into her home and get Washington out.

The Court finds both Detective Von Leue's testimony and Ms. Mathis's testimony generally credible. But even if Detective Von Leue threatened to break

---

[3] At the hearing, Ms. Mathis specifically testified that "[Detective Von Leue] said can you give me the keys so I won't have to break your door down so you don't have to buy another door. In a nice tone. He was nice about it."

down the door, a "truthful explanation of the manner in which a search could be executed, without more, falls short of the standard required for coercion." *United States v. Chavez*, No. 08 CR 511-2, 2009 WL 1098696, at *3-4 (N.D. Ill. Apr. 23, 2009) (denying motion to suppress after concluding that officers did not coerce defendant by telling him that they might break down the door if he did not consent to search); *see also United States v. Long*, 866 F.2d 402, 405 (11th Cir. 1989) (holding consent to search voluntarily given even if officers said they would come back to "dig the place up."); *United States v. Azua-Rinconada*, 914 F.3d 319, 324-25 (4th Cir. 2019) (concluding that statement "open the door or we're going to knock it down" did not impact voluntariness of consent).  In addition, this comment does not appear to be intended as a threat – Ms. Mathis agreed that her interactions with Detective Von Leue were calm, courteous, respectful, and nonaggressive.  Rather, it appears this comment may have been made to highlight the mutual interests of Ms. Mathis and the law enforcement officers in cooperating during the fugitive investigation.

Perhaps most importantly, it does not appear that Detective Von Leue's "threat" had any real impact on Ms. Mathis.  Based on the testimony at the evidentiary hearing, it appears that Ms. Mathis wanted Washington out of her home first and foremost, telling the officers what room they would locate Washington in and even offering to go in and get him herself.

As such, the Court concludes that Ms. Mathis, the owner and a resident of the house, consented to law enforcement officers entering the residence to arrest

Washington. The motion is denied as to this ground. Because Ms. Mathis gave consent to enter the residence, officers were permitted to enter without a search warrant. They were also permitted to perform a protective sweep of the residence while they searched for Washington. *See United States v. Hromada*, 49 F.3d 685, 690 (11th Cir. 1995); *United States v. Hollis*, 780 F.3d 1064, 1069 (11th Cir. 2015). During the protective sweep, officers viewed a firearm in plain view in the master bedroom, along with marijuana. Officers were permitted to seize these items without a warrant, and these items provided probable cause for the search warrant that officers later obtained.

## *Miranda Warnings*

Defendant's claim of a *Miranda* violation is without merit and was denied orally at the evidentiary hearing. Defendant appears to argue that some minimum amount of time (of more than one minute) is required for *Miranda* warnings to be effective. However, no talismanic incantation is required to satisfy *Miranda*. *See California vs. Prysock*, 543 U.S. 355, 359 (1981).

At the hearing, Agent Montoya testified that she recited *Miranda* warnings to Defendant, who acknowledged that he understood his rights prior to his interview but declined to sign the form. She testified that she read them word-for-word, in a pace that would be understandable. Special Agent Kevin Corrigan testified that he was present in the vehicle when *Miranda* warnings were administered, that Agent Montoya read them verbatim and at an understandable pace, and that Defendant said he understood his rights but declined to sign the

form.  The Court finds this testimony credible.  As such, the Court finds that Defendant knowingly and voluntarily waived his *Miranda* rights.[4]

**DONE and ORDERED** in Chambers, in Tampa, Florida, this 20th day of October, 2022.

*/s/ T.P. Barber*

**TOM BARBER**
**UNITED STATES DISTRICT JUDGE**

---

[4] The Court notes that Defendant had previous contacts with law enforcement and the criminal justice system, and he did not ask any questions about his rights or indicate in any way that he did not understand his rights.